[Crim. No. 25596. Apr. 3, 1989.]

In re ERIC W. JOYNER on Habeas Corpus.

COUNSEL

Donald Specter and Steven Fama for Petitioner.

Manuel E. Nestle as Amicus Curiae on behalf of Petitioner.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Martin S. Kaye and Robert R. Granucci, Deputy Attorneys General, for Respondent.

OPINION

KAUFMAN, J.—Petitioner Eric W. Joyner was convicted of grand theft (Pen. Code, § 487)[1] and robbery (§ 211), with an enhancement for being armed with a firearm (§ 12022, subd. (a)), and was sentenced to a term of four years in state prison concurrent with two Florida prison terms previously imposed for unrelated offenses. ▉ Petitioner seeks presentence custody credits against his California sentence for custody time in Florida and California from the date a "hold" was placed against him for the California offenses until he was sentenced in California, all of which time has already been credited against petitioner's Florida sentence. The case presents the recurring troublesome question of when custody is "attributable to proceedings related to the same conduct for which the defendant has been convicted" within the meaning of section 2900.5, subdivision (b).

We hold that a period of time previously credited against a sentence for unrelated offenses cannot be deemed "attributable to proceedings" resulting in a later-imposed sentence unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence. In other words, duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation. Under this test, petitioner has not demonstrated entitlement to the credits he seeks.

I

In January 1983, arrest warrants were issued in California charging petitioner with robbery and grand theft. Petitioner was arrested in Florida on March 15, 1983, for crimes committed in that state. ▉ ▉ On the same day, Florida authorities discovered the outstanding California arrest warrants and, after notifying the California authorities, placed a hold[2] on

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The term "hold" does not appear in any statute and although it has been mentioned frequently in the case law, the term has seldom been defined or explained. (But see *In re Law* (1973) 10 Cal.3d 21, 24, fn. 2 [109 Cal.Rptr. 573, 513 P.2d 621] [explaining "parole hold"].)

petitioner at California's request. There is no evidence or allegation that petitioner made any attempt to obtain his release by posting bond or otherwise, or that the hold prevented petitioner from doing so. Upon learning that petitioner was a Florida probationer, Florida authorities instituted probation revocation proceedings.

Petitioner pled guilty to the Florida burglary and grand theft charges and on July 19, 1983, he was sentenced to concurrent terms of 3 years in the Florida state prison, with credit for 126 days of presentence custody. On September 2, 1983, petitioner's Florida probation was revoked and he was sentenced to a 3-year term for burglary, with credit for 352 days of presentence custody. This term was ordered to run concurrently with the terms imposed on July 19.

Petitioner was then extradited to California, where he entered negotiated pleas of guilty to the charges of robbery and grand theft. Before accepting the pleas, the court advised petitioner that his California sentence would be served "independently of the Florida sentence." On December 29, 1983, the California court sentenced petitioner to state prison for a four-year term. The court failed to state whether the term was to run concurrently with or consecutive to the Florida terms and thus, by operation of section 669,[3] the term ran concurrently with the Florida sentences. The court expressly denied defendant's request for presentence custody credit. Petitioner continued to serve his Florida sentences while in California, both before and after sentencing in this state.

A divided Court of Appeal affirmed the judgment and denied a petition for writ of habeas corpus challenging the denial of credits. (*People* v. *Joyner* (1984) 161 Cal.App.3d 364 [207 Cal.Rptr. 636].)[4] We denied a petition for hearing.

---

A hold refers generally to any document or agreement or understanding, formal or informal, used to prevent the release of a prisoner. Although it has become common to speak of a warrant hold as providing a basis for custody, it would seem that, strictly speaking, custody must be based ultimately on the arrest warrant itself or on other recognized legal process. (See, e.g., § 1551 et seq.; *State* v. *Demars* (1984) 119 Wis.2d 19 [349 N.W.2d 708].)

[3] Section 669 provides, in relevant part: "When any person is convicted of two or more crimes, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same judge or by different judges, the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he is sentenced shall run concurrently or consecutively . . . . [¶] Upon the failure of the court so to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently."

[4] In the Court of Appeal, both the majority and the dissent proceeded on the assumption that petitioner's California sentence was consecutive to the Florida terms. As noted in the text, we have determined that a consecutive term was neither bargained for nor imposed by

Petitioner subsequently filed an original petition for writ of habeas corpus in this court.[5] To resolve a conflict in the Court of Appeal cases addressing presentence credit issues similar to those presented here, we issued an order to show cause.

## II

We begin with the language of the controlling statute. Section 2900.5 provides, in pertinent part: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including . . . any time spent in a jail, . . . prison, . . . or similar residential institution, all days of custody of the defendant, including days served as a condition of probation in compliance with a court order . . . shall be credited upon his term of imprisonment . . . . [¶] (b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

This court first addressed the meaning of section 2900.5 in the context of multiple proceedings in *In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789]. In that case the petitioner was serving a state prison sentence for manslaughter when he was charged with an unrelated murder and transferred to a county jail pending trial on the new charge. Following conviction on the murder charge, and the imposition of a state prison sentence concurrent with the sentence for manslaughter, the petitioner claimed presentence credit under section 2900.5. In a decision holding that the petitioner was not entitled to any presentence credit, Justice Richardson, writing for a unanimous court, stated that the petitioner "would necessarily have served that . . . period in state prison for the original manslaughter conviction" and that he "was already receiving credit for that period against his original conviction." (*Rojas, supra,* at p. 155.)

The court continued: "Defendant's chief semantic argument is that because subdivision (b) of section 2900.5 does not read '*exclusively* attributable to proceedings' he should be granted the credit he seeks. He is in error. Although the word 'exclusively' does not appear, it is clearly provided that credit is to be given 'only where' custody is related to the 'same conduct for which the defendant has been convicted.' The sensible inference is that a

the court. Respondent has conceded that this is so and that section 669 (see fn. 2, *ante*) applies.

[5] Since the petition was filed, petitioner has been paroled. Resolution of the issue presented will affect the duration of the parole term (see § 2900.5, subd. (c)).

defendant is not to be given credit for time spent in custody if during the same period he is already serving a term of incarceration." (*Rojas, supra,* 23 Cal.3d at pp. 155-156, original italics.) The *Rojas* court concluded: "Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (*Id.,* at p. 156.) Contrary language in *In re Pollock* (1978) 80 Cal.App.3d 779, which had interpreted section 2900.5 "'to provide that a defendant is entitled to receive credit upon a prison sentence for time spent in jail awaiting disposition of the criminal proceedings resulting in that sentence even though during that same period of jail time the defendant is serving a prison sentence on another conviction,'" was expressly disapproved. (*Rojas, supra,* at p. 157.)

■ In the instant case, petitioner was in custody on the unrelated Florida charges during the entire time for which he seeks credit. Once the first Florida sentence was imposed, and petitioner began serving that sentence, petitioner's situation was indistinguishable from that of the petitioner in *Rojas, supra,* 23 Cal.3d 152—the custody was as a practical matter unavoidable and therefore could not be attributable to the California proceedings from which the hold originated. (See *State* v. *Moliga* (Idaho App. 1987) 113 Idaho 672 [747 P.2d 81, 83-85].) The period from petitioner's arrest in Florida to his sentencing in that state presents a slightly different issue. In determining the proceedings to which this period may properly be attributed, it is significant that the period has been credited against petitioner's Florida sentences, making it also a period during which petitioner in effect was serving a sentence on another conviction. While petitioner's custody during this time may not have been unavoidable, the record contains no evidence that petitioner ever posted bail on the Florida charges or that he could have obtained release had the California hold not been placed against him. It has not been shown, in short, that the California hold, the precise nature and terms of which are not disclosed by the record (see fn. 2, *ante*), had any effect upon petitioner's liberty at any time. Thus petitioner has failed to demonstrate that his presentence custody was, within the meaning of section 2900.5, "attributable to" anything other than the Florida proceedings. Accordingly, the logic of *Rojas, supra,* 23 Cal.3d 152, dictates that petitioner's claim to presentence credit be rejected in its entirety on the present record.

■ In resolving questions of statutory construction, the decisions of other jurisdictions interpreting similarly worded statutes, although not controlling, can provide valuable insight. (See *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 298 [250 Cal.Rptr. 116, 758 P.2d 58].) As the federal government and most other states have enacted statutes similar to section 2900.5, decisions from those jurisdictions may assist us in resolving our common problem of statutory construction. ■ Our

review of the pertinent case law reveals that the federal courts and a number of other state courts, when presented with the factual pattern of this case, employ a "strict causation" analysis consistent with this court's decision in *Rojas, supra,* 23 Cal.3d 152, and that the courts of many other states, using various approaches, would deny credits on the facts presented here.

For example, until quite recently a federal statute (18 U.S.C. § 3568) provided that a prisoner would receive credit toward service of his federal sentence "for any days spent in custody in connection with the offense or acts for which sentence was imposed."[6] Federal courts have interpreted this language to mean "that the credit against the federal sentence attaches only when the federal detainer is the *exclusive* reason for the prisoner's failure to obtain his release on bail." (*United States* v. *Blankenship* (6th Cir. 1984) 733 F.2d 433, 434, italics in original. Accord: *United States* v. *Brown* (5th Cir. 1985) 753 F.2d 455, 456.) Several state courts have used the same "strict causation" analysis to deny credits for out-of-state or federal incarceration. (E.g., *State* v. *Horrisberger* (Ariz.App. 1982) 133 Ariz. 569 [653 P.2d 26]; *State* v. *Willis* (Minn. 1985) 376 N.W.2d 427, 428-429; *Peterson* v. *N.Y.S. Dept. of Correctional Ser.* (1984) 100 App.Div.2d 73 [473 N.Y.S.2d 473, 474].) Cases supporting a denial of credits on the facts shown here, although not necessarily for reasons adopted in this opinion, include *Cox* v. *State* (1986) 288 Ark. 300 [705 S.W.2d 1]; *Bruner* v. *State* (Fla.App. 1981) 398 So.2d 1005; *Tucker* v. *Stynchcombe* (1977) 239 Ga. 356 [236 S.E.2d 623]; *State* v. *Moliga, supra,* 113 Idaho 672; *Houston* v. *Com.* (Ky.App. 1982) 641 S.W.2d 42; *State* v. *McCarter* (La.App. 1985) 469 So.2d 277; *McMichael* v. *State* (1978) 94 Nev. 184 [577 P.2d 398], overruled on unrelated grounds in *Meador* v. *State* (1985) 101 Nev. 765 [711 P.2d 852, 856]; *State* v. *Allen* (1978) 155 N.J.Super. 582 [383 A.2d 138]; and *State* v. *Demars, supra,* 119 Wis.2d 19.

To support his presentence credit claim, petitioner relies on certain statements from this court's decision in *In re Atiles* (1983) 33 Cal.3d 805 [191 Cal.Rptr. 452, 662 P.2d 910]. *Atiles,* however, was a case in which the same criminal conduct resulted both in revocation of parole and the filing of new charges. Because it was a "same conduct" case, *Atiles* is not controlling in cases like this one in which concurrent sentences were imposed in separate proceedings for unrelated criminal conduct. Although the *Atiles* opinion, to which three justices dissented, does contain dicta supportive of petitioner's contention, those dicta are logically inconsistent with *Rojas, supra,* 23

---

[6]The federal statute currently in force (18 U.S.C. 3585) permits credit for time in custody "as a result of the offense for which the sentence was imposed" or "as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed" but only if the period "has not been credited against another sentence." The latter provision would preclude any credits on the facts of this case.

Cal.3d 152, and are unsupported by the language or legislative history of section 2900.5.

The *Atiles* opinion went astray in its discussion of the legislative purpose of section 2900.5. Previous decisions of this court had acknowledged two purposes for awarding presentence credits: (1) eliminating the unequal treatment suffered by indigent defendants who, because of their inability to post bail, serve a longer overall confinement for a given offense than their wealthier counterparts (*Rojas, supra,* 23 Cal.3d at p. 156), and (2) equalizing the actual time served in custody by defendants convicted of the same offense (*People* v. *Riolo* (1983) 33 Cal.3d 223, 228 [188 Cal.Rptr. 371, 655 P.2d 723]). The latter purpose is achieved by awarding credit for all periods of presentence custody attributable to the proceeding, including time served as a condition of probation, and not merely for pretrial confinement resulting from inability to post bail. Both of these purposes are concerned with equalizing the treatment of different individuals each convicted in a single proceeding of the same offense or offenses.

After mentioning these two recognized purposes, *Atiles* asserted that "unequal treatment" would also result "from denial of credit on multiple concurrent terms." (*Atiles, supra,* 33 Cal.3d at p. 812.) After referring to situations in which a defendant obtained a severance of charges, a prosecutor elected not to join multiple counts in a single accusatory pleading, or a defendant faced charges in more than one jurisdiction, *Atiles* remarked obliquely that the Legislature "has not either expressly or by implication indicated an intent to deny dual credit in any of these situations" and, somewhat more directly, that if section 2900.5 were construed to deny dual credit in these situations "the legislative purpose of avoiding unequal treatment of prisoners would be frustrated, not furthered." (*Id.* at p. 813.)

To the extent that *Atiles* has been read as suggesting that section 2900.5 should be applied invariably to maximize the concurrency of terms imposed at different times, we disavow the suggestion. There is no persuasive indication that section 2900.5 was intended to achieve the goal of making the net time served on separately imposed concurrent terms equal to the net time served on concurrent terms imposed at one time in a single proceeding. The language of section 2900.5 contains no hint of this goal, nor has any legislative history been cited to establish the Legislature considered this goal when section 2900.5 was enacted or amended. There is no suggestion of this goal in *Rojas, supra,* 23 Cal.3d 152, the first decision of this court to construe section 2900.5 in the context of multiple proceedings, even though concurrent sentences were imposed on the petitioner in that case and thus the supposed goal of maximizing concurrency of terms was directly implicated.

If the intent of section 2900.5 was to mandate dual credits for all concurrent terms, then presentence credit should have been granted in *Rojas*.

The equalization-of-concurrent-terms rationale seems particularly unworkable and inappropriate in cases like the present one, involving a California term concurrent with terms earlier imposed by the courts of another state. A defendant in this situation can hardly expect to receive precisely the same sentence he would have received had all the offenses been committed within California and prosecuted and sentenced together. (See rule 451(b), Cal. Rules of Court; *People* v. *Veasey* (1979) 98 Cal.App.3d 779, 788-792 [159 Cal.Rptr. 755].) Moreover, there is no way of knowing the extent to which the California sentencing court's understanding of presentence-credit entitlement may have influenced the sentencing determinations it made, including the decision to sentence concurrently, and thus no way of knowing whether petitioner was actually disadvantaged by the denial of presentence credits in this case. Indeed, the court's statement that petitioner's sentence would be served "independently of the Florida sentence" and its express denial of defendant's request for presentence credits strongly suggest that the court would not have countenanced any reduction of petitioner's net term.

We acknowledge that determining entitlement to presentence credits for concurrent terms imposed in multiple proceedings raises a number of troubling questions. We do not expect that this decision will resolve them all and we recognize that any rule or combination of rules is likely to produce some incongruous results and arguable unfairness when compared to a theoretical state of perfect and equal justice. Recognizing there is no simple or universal formula to solve all presentence credit issues, our aim is to provide for section 2900.5 a construction which is faithful to its language, which produces fair and reasonable results in a majority of cases, and which can be readily understood and applied by trial courts. The construction adopted by this court in *Rojas, supra,* 23 Cal.3d 152, meets these requirements and has the additional reassuring virtue of being consistent with the decisions of a great number of other jurisdictions construing similar provisions. We reaffirm that construction as applied to the factual pattern of this case and disapprove statements in *Atiles, supra,* 33 Cal.3d 805, and its progeny to the extent they are inconsistent with the *Rojas* construction as here applied.

### III

As petitioner has failed to demonstrate an entitlement to presentence credit according to the construction of section 2900.5 established by this

court in *Rojas, supra,* 23 Cal.3d 152, the petition for writ of habeas corpus is denied.

Lucas, C. J., Mosk, J., Panelli, J., and Eagleson, J., concurred.

**BROUSSARD, J.**—I dissent. The majority hold that a defendant in custody facing two unrelated charges is entitled to pretrial custody credit against the first sentence imposed, but he is not entitled to such credit when sentence is imposed for the second charge, "unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence." (Maj. opn. at p. 489.) However, the applicable statute and established case law demonstrate that a defendant facing two unrelated charges is entitled to pretrial custody credit on each charge until he starts serving a term of imprisonment on one of them. The rule established by the majority for the awarding of pretrial custody credit is inequitable; it discriminates against indigent defendants. It is inconsistent with our previous interpretation of the applicable statute, and it will prove to be an administrative nightmare.

Penal Code section 2900.5 provides in pertinent part: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including . . . any time spent in a jail, . . . prison, . . . or similar residential institution, all days of custody of the defendant, . . . shall be credited upon his term of imprisonment . . . . [¶] (b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

We have established that a defendant's entitlement to custody credit for multiple restraints ends when the defendant begins serving a term of imprisonment. (*In re Rojas* (1979) 23 Cal.3d 152, 156 [151 Cal.Rptr. 649, 588 P.2d 789].) The defendant is nonetheless entitled to dual credit for multiple restraints before he begins serving a term; the defendant need only show that the charge as to which he seeks credit was a basis, not necessarily the exclusive basis, for the custody. (*In re Atiles* (1983) 33 Cal.3d 805, 810 [191 Cal.Rptr. 452, 662 P.2d 910].)

In *In re Rojas* we explained that the purpose of section 2900.5 is to "eliminate the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts. [Citations.]" (*In re Rojas, supra,* 23 Cal.3d 152, 156, and cases cited.) Thus without section 2900.5, an indigent who is

unable to post bail and waits for trial for six months, would serve six months longer than the prisoner who is convicted of the same offense, but was able to avoid pretrial confinement by posting bail. When a defendant is serving a term of imprisonment, however, and is accused of a second unrelated offense, it is not his indigency which causes him to be unable to gain his freedom pending trial. A prisoner may be rich as Croesus, but he will remain in prison along with his indigent cellmate, while new charges are tried against each of them. Thus we rejected the claim of a man serving a prison term for manslaughter for credit against a subsequent term for murder. The murder charge was filed after the defendant started serving his term for manslaughter; it had no conceivable effect on his custody. His custody was not attributable to the second offense. (23 Cal.3d at p. 156.)

Similarly, in *In re Atiles* we explained at length that unequal treatment of indigents may follow from denial of credit on multiple concurrent terms. (*In re Atiles, supra,* 33 Cal.3d 805, 812-813.) The accused who has sufficient funds to post bail in two separate proceedings against him, and who is ultimately sentenced to concurrent terms in those proceedings, will serve less time in custody than the indigent who is also sentenced to concurrent terms for identical offenses, but who was unable to post bail in one or both of the proceedings. That is, this unequal treatment will result unless the indigent is able to receive credit for pretrial custody against both of his concurrent terms.

In *Atiles* we made it clear that dual credit is available when defendant is under multiple restraints, as long as defendant is not serving a term of imprisonment. Atiles was on parole when he was charged with two new offenses. A parole hold was placed on him, and shortly thereafter his parole was revoked and he was returned to prison for six months. After the expiration of the six months, he pleaded guilty to one of the new offenses. We said that he was entitled to credit against the new sentence for the time spent in prison for the parole revocation. We rejected the argument that since the parole revocation custody was attributable in part to the offense which was apparently dropped as part of a plea bargain, the revocation time was not attributable solely to the new offense on which defendant was sentenced. We explicitly rejected the contention that *Rojas* held that pretrial credit is available only when custody is attributable exclusively to the offense defendant is ultimately sentenced on. Regarding *Rojas,* we said: "It was not a holding that the custody must be attributable exclusively to the conduct underlying the term ultimately imposed." (*Atiles, supra,* 33 Cal.3d at p. 810.) In a footnote, we explained the absurd consequence of the Attorney General's argument: "Were we to accept that proposition, credit would be denied a nonparolee charged with two offenses and acquitted of one." (*Id.* at p. 810, fn. 4.)

To make it absolutely clear that pretrial custody credit should be awarded even if custody was not exclusively attributable to the offense defendant is being sentenced on, we instructed trial courts: "In determining whether custody for which credit is sought under section 2900.5 is 'attributable to proceedings leading to the conviction,' the sentencing court *is not required to eliminate all other possible bases for the defendant's presentence incarceration. The court need only determine that the defendant was not already serving a term for an unrelated offense when restraints related to the new charge were imposed on him, and the conduct related to the new charge is a basis for those restraints.* [Fn.]" (*In re Atiles, supra,* 33 Cal.3d at p. 810, italics added.)

Although *Atiles* involved the combination of a parole revocation and a new conviction, and the offenses all took place in California, its principles dictate the result in this case. In order to warrant credit under section 2900.5, custody need not be exclusively attributable to the offense for which credit is sought, as long as the custody was not served under sentence for another conviction. All of this flows naturally from the intent of the Legislature in enacting section 2900.5 to equalize the position of indigents and nonindigents with respect to pretrial custody credit. Accordingly, since defendant's custody in Florida and California, up until the time sentence was imposed on him in Florida, was attributable in part to the California charges, he is entitled to credit under section 2900.5 for that period.[1]

The majority contend that *Atiles* permits dual credit only where the subject term and the pretrial custody are based on the same criminal conduct. In fact, the parole revocation in *Atiles* was based in part on an offense of which defendant was never convicted and for which he was never sentenced, so it is not true that there the subject term and the pretrial custody were based entirely on the same conduct. In any event, we made it clear that the rationale of our decision extended beyond cases involving the same criminal conduct. We said that two legislative purposes animated section 2900.5: " 'eliminat[ing] the unequal treatment suffered by indigent defendants who, because of their inability to post bail, served a longer overall confinement than their wealthier counterparts' [citation] and equalizing the actual time served in custody for given offenses. [Citation.]" (*Atiles, supra,* 33 Cal.3d at p. 812.) We observed that "[u]nequal treatment follows not

---

[1] The majority claim that there is no evidence that the California warrant hold had any effect on defendant's custody in Florida at any time. (Maj. opn. at p. 490.) I need only note that under the Uniform Agreement on Extradition, of which Florida is a signatory, it is the obligation of the state which discovers a fugitive from criminal charges in another state to arrest the fugitive. (See Pen. Code, § 1548.1.) Subject to certain procedural requirements, the receiving state must then deliver up the fugitive to the demanding state. (*Ibid.*) This is what Florida did.

only from denial of credit altogether for presentence jail time, however, but also *from denial of credit on multiple concurrent terms*. This may occur if a defendant seeks *separate trials on severable charges to ensure his right to a fair trial, if a prosecutor does not join multiple counts in a single accusatory pleading, or if a defendant faces charges in more than one jurisdiction.* It may also occur in cases such as this in which parole revocation proceedings and new charges are pending simultaneously if the defendant does not promptly plead guilty and seek immediate sentencing. In each of these situations, the possibility of unequal treatment exists if concurrent terms are imposed, but because sentence has been imposed or parole revoked in the first proceeding before the others are tried, credit for time in jail while awaiting disposition of the remaining charges is denied. The terms then are not truly concurrent since the effect of denying credit on the later terms is that they commence only on the date sentence is pronounced. The time between sentencing in the first proceeding and that in the second is, as to the second term, 'dead time.' The Legislature has not either expressly or by implication indicated an intent to deny dual credit in any of these situations." (*Id.* at pp. 812-813, italics added.)

The majority repudiate the concern we expressed in *Atiles* with ensuring concurrency of sentences as unsupported by any legislative history, and as unnecessary to the opinion. But our discussion in *Atiles* of the twin legislative purposes of section 2900.5 was not mere surplusage. In fact, ensuring concurrency of sentences is simply a necessary corollary of the overriding concern that indigents not serve longer terms simply because of their indigency. An indigent who faces trial on two unrelated charges and receives concurrent terms on these charges should not serve a longer sentence than one who faces the same charges and terms, but was able to post bail.

The majority argue that if *Atiles* is correct in asserting that section 2900.5 was intended to assure true concurrency of sentences, there is no reason to deny credit for term-serving time. The opinion argues that our conclusion, if followed to its logical end, calls for the overruling of *Rojas*. (See maj. opn. at pp. 494-495.) Not at all. Our concern with ensuring concurrent sentences should be understood in light of the Legislature's obvious intent to equalize the position of indigent and nonindigent pretrial detainees. A person serving a term of imprisonment cannot achieve his freedom whether he is rich or poor. Therefore there is no unfairness in holding that the prisoner's "pretrial" detention is not attributable to the new offense.

The majority would have us expand *Rojas* and reject *Atiles,* and take the position that a person is not entitled to pretrial custody credit under section 2900.5 unless he can demonstrate that his custody was solely attributable to the offense for which he seeks credit, and in fact that he would have been at

liberty but for that restraint. (See maj. opn. at p. 489.) In *Rojas,* we did say that "Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty." (23 Cal.3d at p. 156.) The context of this statement, however, is that the defendant's prison term made the wealth-equalizing function of section 2900.5 irrelevant. When two unrelated charges keep the defendant in custody before trial, however, the wealth-equalizing function of section 2900.5 should come into play.

To hold, as the majority do, that a defendant is not entitled to credit unless he can show that his custody was attributable solely to the offense of which he was convicted means that whenever there are dual restraints arising from unrelated charges, the indigent who cannot post bail receives pretrial custody credit only against the first-imposed sentence. The indigent who faces two separate, unrelated charges may for example, be charged with burglary, and bail is set at $10,000. He is charged with a second unrelated burglary, and bail is set at $20,000. He is convicted of both, and is sentenced to concurrent terms. Under the majority rule, only the person who could post bail on both charges can obtain a fully concurrent sentence on the charges. If he cannot post bail on the first charge, he gets credit for pretrial custody against that charge, but not against the second charge, since he cannot establish that his custody was solely attributable to the second charge. Thus the second sentence cannot be made fully concurrent with the first if defendant is indigent, while it can be made fully concurrent if he has money to post bail.

Finally, the interest of judicial efficiency militates against a system requiring minitrials at the sentencing hearing, where the parties sift through the evidence to determine whether there are multiple bases for the defendant's pretrial custody. A traffic warrant, a technical probation revocation, a warrant on an offense of which defendant was ultimately acquitted, all may have contributed to defendant's custody. The majority would require defendant to allege that he would have been released in Florida but for the California hold; this allegation puts at issue the bail and own-recognizance-release practice of another jurisdiction. We should not impose on the already burdened trial courts the obligation to determine the inherently speculative question whether, but for the charge on which defendant was convicted, defendant would have been free from custody.

I would order the trial court to modify the judgment to grant petitioner pretrial custody credit for the time that he was in custody in Florida after

the California hold was placed on him until he began serving the term of imprisonment under the Florida conviction.

Arguelles, J.,* concurred.

Petitioner's application for a rehearing was denied May 24, 1989. Broussard, J., was of the opinion that the application should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.